CROUSELLAT (DE TASLET v.). See Case No. 3,827.

CROUSILLAT (DE TASTETT v.). See Case No. 3,828.

CROW (UNITED STATES v.). See Case No. 14,895.

CROWDER (LYNCH v.). See Case No. 8,-637.

---

## Case No. 3,441.
### CROWE v. AIKEN.

[2 Biss. 208;[1] 4 Am. Law Rev. 450.]

Circuit Court, N. D. Illinois. Jan., 1870.

LITERARY PROPERTY—PUBLICATION OF PLAY—DEDICATION.

1. An author or his assignees have, before publication, an exclusive right to control the use of his literary productions.

2. Representation of a play upon the stage is not, at common law, a publication.

[Cited in Thomas v. Lennon. 14 Fed. 851.]

3. The English statute of 5 & 6 Vict. c. 45, § 20, which makes representation there a publication, cannot be so extended as to affect the exclusive proprietary rights of the author or his assignees at common law in the United States. It affects only proceedings had under the statute itself.

4. The mere representation of a play does not dedicate it to the public, except so far as those who witness its performance can recollect it, nor have spectators the right to secure its reproduction by phonographic or other means independent of memory.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

5. Unauthorized performance of a play which has been represented on the stage will not be presumed to be the result of memorizing it by a spectator, but the proof of this must be so clear as to negative any other conclusion.

6. No restrictive notice is necessary to spectators to secure the author's rights, nor will such notice give him a right which he has not at common law.

7. The author's rights at common law have not been taken away or limited by any existing act of congress.

In equity. This was a motion to dissolve a preliminary injunction restraining the defendant, the manager of a theater in Chicago, from producing a play, the copyright of which was owned by complainant.

Jos. P. Clarkson, for complainant.

Ira B. Warren, for respondent.

DRUMMOND, Circuit Judge. The bill in this case was filed to prevent the performance in Chicago of a drama called Mary Warner by the defendant, who is manager of a theatre. It is based not upon any copyright statutes, but on the principles of the common law and of equity. Mr. Tom Taylor, a subject of the queen of Great Britain, is the author of the drama. The plaintiff is the husband of an actress of distinction known to the public as Miss Kate T. Bateman. The play, written by Mr. Taylor for Miss Bateman, and the principal character to be personated by her, in pursuance of a contract between the plaintiff and Mr. Taylor made in February, 1869, at London, was not intended for publication, but for representation on the stage. After it was completed the author duly transferred in writing to the plaintiff all his right in the play and in the manuscript thereof, together with the exclusive right to its representation on the stage in the United States for five years from June 1, 1869. The manuscript was accordingly delivered to the plaintiff and the play was represented at the Haymarket theatre, in London, in June, 1869. Afterward the plaintiff and his wife came to the United States, and Mary Warner has been performed at Booth's theatre in the city of New York.

The foregoing facts do not appear to be controverted. The bill alleges that the play has always been kept in manuscript; that it has never been printed by Mr. Taylor, by the plaintiff, nor by Miss Bateman, nor with the consent or acquiescence of any one of them, nor published with the consent or acquiescence of any one of them, otherwise than by a representation on the stage, and that the defendant did not produce it at his theatre by means of the memory of those who had witnessed its representations on the stage, but by a copy wrongfully and surreptitiously obtained from the manuscript, or from a printed copy wrongfully and fraudulently printed. An injunction was issued by the court, and the performance of Mary Warner by the defendant's company stopped.

The defendant now appears and moves to dissolve the injunction.

The motion has been fully argued by the counsel of the defendant upon two grounds: First, the law of the case as settled in England and in this country; second, on the facts contained in the affidavits of Robert M. De Witt and Charles J. Clarke, both of New York.

The affidavit of De Witt states that he furnished the defendant with a copy of the play used by him; that he procured it from a person in London, on or about the 29th of July, 1869, who obtained the same only from repeated representations on the stage at the Haymarket theatre; that there was no restriction or prohibition against any of the spectators using such play as they saw fit. He also states he is advised that by section 20, c. 45, 5 and 6 Vict., "The first representation or performance of any dramatic piece in England is deemed equivalent to the first publication of a book."

The affidavit of Clarke states that the play of Mary Warner was in print in the city of New York as early as August, 1869; that he bought a printed copy of the play at a public news-stand in New York, where the same was publicly exposed for sale.

The copy furnished to the defendant has been exhibited in court. It is not in the usual form of a published play, but consists of printed slips fastened together in pamphlet form, with plats and stage directions as if for dramatic use only.

Various affidavits have been introduced by the plaintiff, from which it is apparent that the play Mary Warner has never been printed with the knowledge or consent of Mr. Taylor, the plaintiff, nor Miss Bateman. It is not for sale generally in New York, and not at all in England. It is a fair inference, I think, from all that appears in the case, that the only printed copy in existence was printed by Mr. De Witt, or under his direction, and is kept for sale at a high price to the theatrical managers. Mr. Clarke's affidavit was made on the 14th of December, and the copy referred to by him may have been, and probably was, purchased directly or indirectly of De Witt or through his instigation, and as he does not state when, it may have been since this bill was filed.

It would seem, in answer to the allegations of the bill, the defendant ought to show that his copy of the play came from a printed or other copy authorized by the author or his assignee or from the memory of those present when the play was performed. The manner in which the play was procured in London is rather vaguely stated. It was from repeated representations only. But was it from the memory of those who heard it performed, or from phonographic reporters? The statement is entirely consistent with the latter source of information.

The author of any literary or dramatic work is the sole proprietor of the manuscript

and its contents, and of copies of the same, independently of legislation, so long as he does not publish it, or part with the right of property. This is called a common law right, and exists irrespective of copyright statutes. This right of property he can transfer, and a court of equity will protect him or his assignee, in a proper case, just as it will the owner of any other species of property. Those judges who maintained this common law right in the cases of Millar v. Taylor [4 Burrows, 2304] and in Donaldson v. Beckett [2 Brown, Parl. Cas. 129], decided a hundred years ago, it has always been thought, had the strength of the argument on their side in the great discussion to which they gave rise. Subject to the qualification stated, it has been generally admitted in this country.

Mr. Taylor, then, was the proprietor of the drama Mary Warner when finished, and when transferred to the plaintiff the latter became the proprietor on the terms of the transfer. Has the right of property been lost?

It is conceded that it would be lost by any general publication of the play by the proprietor which could be regarded as a dedication to the public, but save this, it is difficult to fix on any rule which shall meet the case. The giving of a copy, or of several copies of a manuscript will not necessarily be a publication. The representation of a play on the stage was decided in England, before the statutes of 5 & 6 Vict., not to be a publication.

There are cases in some of the courts of this country, which hold that the representation of a play is a qualified publication, viz.: to the extent in which the memory of the auditors can retain its language, scenery, or incidents, and if it is reproduced only in that way the author of the work has no remedy. Of these cases it may perhaps be said that, in some instances, the court has not looked very rigidly into the proofs, considering the intrinsic difficulty of the subject. Indeed, as some of the affidavits in this case show, and as all experience proves, to write out a play from memory alone is well nigh impossible.

None of the cases cited by counsel have gone so far as to decide that a reporter can take down the words of an unpublished play as they are uttered by the actors, and thus make it public against the wishes of the author, while on the other hand, it has been frequently held that such action of a reporter can be prevented because not warranted by express or implied conditions. In some instances stress has been laid on the fact of representations of a play being had without restriction, and it is claimed Mary Warner was so produced in England. This, however, is denied, and it is asserted, public notice was given both in London and in New York of the private property in the play. It is not easy to see, however, how a notice can have any effect upon the rights of the au-

thor or of the auditor. If the latter had the right to carry the play away in his memory, or to take it down phonographically, and in either case to use or publish it, the notice prohibiting it could not affect or change that right.

The principal reason, probably, why courts are so much inclined to construe with great strictness the common law right of an author in a manuscript work, partially imparted to the public, is because the right is perpetual. All claims under copyright statutes are for a limited time only. This reason may have had great weight in the discussion which took place in England in the two cases already referred to, and the result of which was the adoption of the principle that the statute of 8 Anne, c. 19, took away the common law property of an author in a published work. But this common law right is always under the control of the legislative power, and it has been exercised in England; and even under the qualified publication of a play by representation there can be no doubt that under the rule now established in the courts it might become public property, in the manner heretofore stated, after repeated representations.

There was some question whether the author of a play had, at common law, the sole right of representation; but so long as the play existed in manuscript, and was unpublished, and not in some way dedicated to the public, the sole right of representation or performance would seem to follow from the exclusive right of property. But the 20th section of chapter 45 of the statute of 5 & 6 Vict. put an end to this question, by declaring that the first public representation or performance of any dramatic piece should be deemed equivalent, in the construction of the act, to the first publication of any book; and I understand it has been decided in England that the public performance, even in a foreign country, of a play of which an English subject is the author, defeats his claim to a copyright under the British statutes.

It is insisted that as by this statute representation was publication, the play Mary Warner, by performance in England, was published there, and all right of property in the play was consequently lost, as well there as in the United States. This necessarily leads to the conclusion, and that is substantially the position of defendant's counsel, that there is no right of property in this country in the play, except that conferred by the statutes, and particularly that of Aug. 18, 1856 (11 Stat. 138). I do not understand that the authorities have gone that far, and it does not follow because his claim under the statutes is gone, that everything is lost. He may still stand on his natural, inherent right as the author and creator of the play, and maintain that right until in some mode, in reason or by statute, it is dedicated to the public. It cannot be true

in this country that the lecturer has no rights of property in his unpublished and unprinted lecture; that the clergyman has no rights of property in his unpublished sermon—the work, it may be, in each case, of weeks of thought and labor—merely because he has repeated it to an audience. And I cannot comprehend why, because congress has legislated about dramatic compositions, the author of a play should occupy different ground. The object of all copyright laws is to protect and regulate property in the product of the brain, not to annihilate it.

There can be no doubt of the authority of congress to legislate on the subject of literary property, and to prescribe the terms upon which copyrights shall be granted, and when it has so legislated it may be truly said to create those rights under the law; and this is the sense of the language of the supreme court in the case of Wheaton v. Peters, 8 Pet. [33 U. S.] 661, that congress, instead of sanctioning an existing right, created it, because the court admits the right at common law. Neither, perhaps, can there be any doubt that congress can declare what sort of publications of a literary or dramatic work shall constitute a dedication to the public.

It follows from what has been said that a definition of the word representation by a British statute is not operative as such in this country, and in all the cases which have arisen here recently upon the rights of authors to unpublished plays written by Englishmen, the objection that their rights in this country were destroyed in consequence of the clause already referred to in section 20, c. 45, of 5 & 6 Vict., seems not to have been taken either by counsel or the court.

I am of opinion that upon principle and authority the author, or his assignee, of an unpublished play, has a right of property in the manuscript and its incorporeal contents; that is, in the words, ideas, sentiments, characters, dialogue, descriptions, and their connection, independent of statutes, and that a court of equity can protect it. I am also of opinion that as the law now exists in this country, the mere representation of a play does not of itself dedicate it to the public, except, possibly, so far as those who witness its performance can recollect it, and that the spectators have not the right to secure its reproduction by phonographic or other verbatim report, independent of memory.

These being my conclusions, the only other question is whether the defendant has brought himself within the condition named; and, after what has been said, it necessarily follows that in my judgment he has not. I cannot doubt that De Witt obtained the copy of the play of Mary Warner, which he furnished to the defendant in this case, either in whole or in part, through a short-hand reporter, or in some other unauthorized or wrongful way, and not by memory only.

The case will therefore go to proofs in the regular way, and the injunction stand until the hearing.

NOTE [from original report]. The cases of Millar v. Taylor and Donaldson v. Beckett, referred to by the court, are reported in 4 Burrows, 2304, and 2 Brown, Parl. Cas. 129. Consult, also, Woolsey v. Judd, 4 Duer, 379; Bartlett v. Crittenden [Case No. 1,076], in which cases the common law rights of authors are elaborately argued. Representation on the stage is not publication. Murray v. Elliston, 5 Barn. & Ald. 657; Keene v. Wheatley [Case No. 7,644]; Macklin v. Richardson, 2 Amb. 694; Roberts v. Myers [Case No. 11,906]; Jones v. Thorne, 1 N. Y. Leg. Obs. 408; Coleman v. Walthen, 5 Term R. 245; Boucicault v. Fox [Case No. 1,691]; Keene v. Clarke, 5 Rob. [N. Y.] 38. As to copy obtained surreptitiously or by memorizing, see Boucicault v. Fox [Case No. 1,691]; Keene v. Kimball, 16 Gray, 545; Morris v. Kelly, 1 Jac. & W. 481. For a full discussion of the right of copy before publication, representation, assignment, etc., see Palmer v. De Witt, 47 N. Y. 532. See, also, Boucicault v. Wood [Case No. 1,693].