· THOMAS *v*. LENNON.

(*Circuit Court, D. Massachusetts.* January 19, 1883.)

1. COPYRIGHT—DEDICATION—SCOPE OF.

    A dedication to the public of the arrangement of a musical composition for the piano does not dedicate what it does not contain and what cannot be reproduced from it, and defendant does not, therefore, possess and has no right to perform such composition as set for an orchestra, although he should have the opportunity to copy it.

2. SAME—MUSICAL COMPOSITION—RIGHTS OF COMPOSER.

    An opera is more like a patented invention than a common book, as to the rule that he who obtains similar results, better or worse, by similar means, though the opportunity is furnished by an unprotected book, should be held to infringe the rights of the composer.

3. SAME—INJUNCTION.

> Where defendant has undertaken the representation of plaintiff's full score, and has hastened his preparations and changed the day to an earlier one for the purpose of anticipating the performance of plaintiff's assigns, a motion to enjoin its performance will be granted.

In Equity.

*Browne, Holmes & Browne*, for complainant.

*T. W. Clarke* and *J. H. Burke*, for defendant.

Before LOWELL and NELSON, JJ.

LOWELL, C. J. This is a motion to enjoin the defendant from causing to be performed Gounod's oratorio, or cantata, called "The Redemption," with full orchestral accompaniment. The plaintiff is a citizen of New York, and the defendant is a citizen of Massachusetts. The hearing was on the bill, the answer, (to be taken as an affidavit,) a stipulation of the parties, and oral evidence of experts. Charles Gounod, of Paris, composed the oratorio in question, with an orchestral accompaniment for 40 or more pieces, and caused it to be performed for the first time, under his own direction, at Birmingham, in England, in August last, on occasion of a musical festival. The defendant avers his belief that the full score has been published in England, but he adduces no proof of this, and the stipulation finds that this belief rests only upon the understanding that the law of England requires a deposit of a copy of the score in the British Museum within three months after the first performance. The law appears to make this requirement unless the score is in manuscript; but we have no evidence whether the score was or was not in manuscript at the time when it should have been deposited if not in manuscript, nor whether it was so deposited, and, if so, whether it is open to public inspection. There is evidence that at some time, not specified, except that it was before the answer was filed, a few copies have been printed, marked "as manuscript only," for the use of the performers. We do not need to decide whether these copies were manuscript in the sense of the statute. There has been time, since the defendant first undertook to act as if the oratorio was open to him, to ascertain the true circumstances of the case in respect to this supposed publication. The composer did permit the words and vocal parts of his oratorio, set to an accompaniment for the piano, to be published in England, and the book can be bought in Boston, and has been produced in evidence. It is believed and admitted to contain all the melodies and harmonies of the original oratorio. It has, in the margin, references to the particular instruments which are to

be employed in playing the different parts of the piece, or many of them. The.plaintiff owns for this country whatever exclusive rights Gounod retained or could retain after the publication of the book. The defendant applied to the plaintiff to buy the exclusive right of performing the oratorio in Boston, but was told that negotiations were pending with the Handel and Haydn Society, of this city, for that right. These negotiations resulted in a purchase by that society. The defendant appears to have gathered, from something which was said to him by the plaintiff, that the negotiations with the Handel and Haydn Society were likely to fall through, and to have begun his preparations as if this were already sure. When he heard that the bargain was made, he undertook to proceed, and to advance his performance so as to bring out Gounod's "Redemption" before the time fixed by the society for their first performance, and accordingly advertised his own for next Sunday, January 21st. Thereupon this bill was filed, and the defendant modified his advertisement, by advice of counsel, so that, in the part material to this case, it read thus:

BOSTON THEATER.

SUNDAY EVENING, JANUARY 21, 1883,

First Performance in Boston of

GOUNOD'S REDEMPTION, ,

With New Orchestration arranged from

indications in the published

Piano-forte Score.

It is admitted, for the purposes of this motion, that the defendant has not copied Gounod's score, but has procured the band parts to be made by some unnamed composer or arranger of music.

Two questions have been ably argued before us: *First,* whether the publication of the book, with the score for the piano and the marginal notes, gives to every one the right to reproduce or copy the orchestral score if he can; *second,* whether a new orchestration, not copied from the original by memory, report, or otherwise, but made from the book, is an infringement of the plaintiff's rights. These were the points argued, for it was admitted that a performance on the stage is not such a publication as will destroy the exclusive common-law right of the author and his assigns to a dramatic or lyrical composition of this sort, though the composer is an alien, not entitled to the benefits of our law of statutory copyright. *Keene* v. *Wheatley,* 4 Phil. 157; *Boucicault* v. *Fox,* 5 Blatchf. 87; *Crowe* v. *Aiken,* 2 Biss.

208; *Palmer* v. *De Witt*, 47 N. Y. 532; *Tompkins* v. *Halleck*, 133 Mass. 32.

1. It is clear that the book is common property in the United States. What does it dedicate to the public? It was to instruct us upon this point that experts were examined; and their opinions were unanimous that the score for the piano contains all the substance of the oratorio, but that the limitations of the instrument are such that it is impossible to express in such a score what the orchestra expresses with its various instruments, and that any one who adapts such a score for an orchestra must add a great deal to it, not in the way of new harmonies and melodies, but in the way of carrying out and applying them to produce the proper effects upon notes and combinations impossible for the piano. An orchestration can be made from the score by a competent arranger, and several such may be found in Boston, but the precise effects, called by the witnesses "color," which a composer gives to the orchestral parts cannot be reproduced, because the possible variations which may be produced by slight changes in the use of the several instruments are infinite. Twelve composers would make 12 different orchestrations. It may be doubted whether Gounod himself could reproduce it, if we can suppose him to have no aid from memory. We understand by this evidence that all the oratorios thus made would be somewhat like the original, and all would differ more or less from it. It is conceivable that some one might be considered better than Gounod's, if made by an abler composer than he; but the chances are that they would be much worse; and all might be, properly enough, called imitations of his work. These being the facts, we consider it to be clear that a dedication to the public of the arrangement for the piano does not dedicate what it does not contain, and what cannot be reproduced from it. Therefore, the defendant does not in fact possess, and has no right to perform Gounod's "Redemption" as set for an orchestra. If he should have the opportunity to copy it he would not be permitted to perform it.

2. We find more difficulty in deciding whether the plaintiff's rights are infringed by a new orchestration. It is held in England that the publication of precisely such a book as this does not authorize a person, without license, to do precisely what this defendant has done. This was the law of England when the book was published. *Boosey* v. *Fairlie*, L. R. 7 Ch. Div. 301; affirmed, 4 App. Cas. 711. A similar decision was announced in this country in 1882, in a very able and

vigorous opinion by Chancellor TULEY, of the circuit court of Cook county, Illinois. *Goldmark* v. *Collmer*, (printed by itself in a pamphlet.) In the English case there was no dissent in either the court of appeal or the house of lords, and the decision of the vice-chancellor, which was reversed, was on a technical point of registration, though he did intimate that any one might take the music by memory, if there were no copyright, which is not the law of this country. Still, in that case, the infringement was almost taken for granted. The argument against it, which was urged here, and is given by Drone in his able and suggestive work on Copyright, 609, is this: "By the ordinary law, applying to books, any one may make such use as he can of what he finds in a copyrighted work, if he does not copy from it; *a fortiori*, if he can reconstruct an opera or oratorio from a book which is common property, without copying the orchestral score which is protected, he is blameless."

This argument has a logical and consistent appearance, but, as applied to a musical work of this kind, the practical objections are very great. Such a work is a single creation, of which the orchestration is an essential part; every reproduction of it from something else is necessarily an imperfect imitation, which, nevertheless, occupies the same field, and may ruin the original. In this respect an opera is more like a patented invention than like a common book; he who shall obtain similar results, better or worse, by similar means, though the opportunity is furnished by an unprotected book, should be held to infringe the rights of the composer. This view of the subject is very well stated by Chancellor TULEY. . Another practical point of some importance is that it would be very difficult to prove, in many cases, whether memory had not had some part in the reproduction. If necessary to the logic of the argument, we might, perhaps, hold that the publication of the piano score is a restricted dedication of that and nothing more. This seems to be the opinion of the English judges, for they appear to have thought that the exact orchestration could be written from the book by any skilled arranger.

*Lastly.* It is plain that the defendant has undertaken to represent Gounod's full score. Even his modified advertisement, while it may notify experts that the reproduction cannot be exact, is calculated to express to the public that Gounod's work in its entirety is to be performed by him for the first time in Boston; and he hastened his preparations and changed the day to an earlier one for the very purpose of anticipating the performance by the plaintiff's assigns. Under these circumstances infringement appears to us to be sufficiently ad-

mitted for the purposes of this motion, even if it were otherwise doubtful.

Motion granted.

See Hubbard v. Thompson, 14 FED. REP. 689; The "Mark Twain" Case, Id. 728; Yuengling v. Schile, 12 FED. REP. 97; Mackaye v. Mallory, Id. 328; Chapman v. Ferry, Id. 693, and note, 696; Ehret v. Pierce, 10 FED. REP. 553; Burton v. Stratton, 12 FED. REP. 696, and note, 704; Shaw Stocking Co. v. Mack, Id. 707, and note, 717.